## IN THE MATTER OF DONALD I. BIERMAN, AN ATTORNEY AT LAW.

Argued December 19, 1972—Decided January 22, 1973.

*Mr. Ira D. Dorian,* for the order.

*Mr. William P. Verdon* argued the cause for respondent (*Messrs. Meyner and Wiley,* attorneys).

PER CURIAM. The complaint against respondent stemmed from a real estate transaction in which respondent represented the buyers. At closing on January 15, 1970 respondent retained approximately $45,000 from the purchase price to be used by him to satisfy a mortgage on the property. After considerable pressure from his clients, the sellers and the mortgagee, respondent sent his check to the mortgagee on April 14, 1970. The check was returned because of insufficient funds. It was paid when redeposited, the account having been augmented meanwhile.

Respondent made sundry misrepresentations to the parties in interest, including his clients. His response to the formal ethics complaint was less than full and candid. When the matter came before us, we offered him an opportunity to enlarge the record and remanded the matter to the Committee to that end. There respondent conceded that the misappropriation had been made good by misappropriating

other trust moneys. It developed, also, as is commonly the situation in cases of misappropriation, that respondent maintained no records from which one could know what sums the trustee account should hold. He testified that he attempted a reconstruction for the purpose of the remand and believed that all trust obligations were covered by the sums now on hand but that he could not be positive that this is so. An accountant engaged by the Committee testified it was impossible, upon the basis of the records respondent produced, to tell whether respondent's estimate was correct. It is perfectly clear that respondent's misappropriations were multiple, the funds of others being used to cover successive misappropriations.

Later, respondent filed an affidavit with us in connection with this final hearing wherein he offered for the first time some further information. He says his difficulties began in 1967 when he became party to a building venture and found the monetary demands exceeded his expectations, whereupon he dipped into the trust account. He says he never maintained the records required by *R.* 1:21–6(b), explaining that "I got into a bad habit and never broke it." He says the "diversions" of his clients' moneys into the business venture began in late 1968 or early 1969 and continued until the venture collapsed in November 1970. He adds that he was mistaken when he testified at his last appearance before the Committee (August 16, 1972) that he had covered his obligations, for he has since ascertained (his affivadit is dated December 12, 1972) that as of October 31, 1972, when the balance of his trustee account was $2,968.09, his obligations to his clients totaled $82,215.36, and this notwithstanding the deposit in the trustee account of about $62,000 of his own moneys between January 1970 and October 1972. He adds that he has raised moneys to cover the bulk of the deficit and has arranged to cover the balance.

Thus it is evident that the substantial sum of money respondent received as set forth in the first paragraph of this

opinion was misappropriated, and that this misappropriation was not an isolated affair. His misappropriations were many and extensive. His conduct manifests he is unequal to the obligations of a member of the bar and requires disbarment. His name will be stricken from the rolls.

*For disbarment*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD, SULLIVAN and LEWIS—7.

*Opposed*—None.